ALLIS-CHALMERS COMPANY, Appellee, v. CITY OF ATLANTIC, CASS COUNTY, Appellant.

**Fixtures:** MACHINERY. Where machinery is sold with the understanding that it will be attached to and become a part of the realty so that it cannot be removed without injury to the property, the vendor thus places it within the power of the vendee to sell or mortgage the same to an innocent purchaser, and must suffer the loss if any occurs thereby.

**Same:** CONDITIONAL SALES: BONA FIDE PURCHASER: NOTICE. Where machinery is sold, the vendor knowing it is to be attached to the real property of a third person and used for a particular purpose, it is necessary, to charge such third party with notice of a conditional sale reserving title in the vendor until the full purchase price is paid, that he have actual notice of the reserved title; con-

structive notice effected by recording the contract is not sufficient under such circumstances.

**Same:** SALES: RECORDING ACTS: APPLICATION OF STATUTES. The purpose of the recording acts is to provide a means by which the owner of property in the possession of a third person, or a lienholder, may protect himself as against the claims of third persons, on the theory that it cannot be known who might acquire title or rights from the party in possession; but the reason of the statute does not apply when. the rights a third party is to acquire in the property are known to the seller of the personalty at the time of the sale.

**Same:** CONVERSION: ESTOPPEL: ELEMENTS OF DEFENSE: INSTRUCTION. Where the vendor of machinery sold the same to a city contractor, with knowledge that it was to be permanently installed in the electric light plant of the city and used in connection therewith in such manner as to make it a part of the realty, and the city subsequently purchased the same of the contractor without notice of a provision in the original contract of sale by which the title was reserved to the seller until payment of the purchase price, it was not necessary for the city to show, in addition to the above facts, that it had paid the contractor for the same, as an essential element of its defense of estoppel in a suit by the seller against if for conversion.

**Same:** INSTRUCTIONS. Where it appeared from the evidence as in this case that the fixtures were purchased by the contractor and placed in the city light plant at different times, and the issue as to the time the city received notice of the condition under which they were purchased by the contractor was also raised by the evidence, the court in submitting the question of plaintiff's right to assert its claim against the city should have distinguished between the fixtures placed in the plant before the alleged notice and those so placed thereafter.

**Same:** MEASURE OF DAMAGES: INSTRUCTIONS. Where an action for the conversion of fixtures was tried on the theory that the original cost was competent evidence of the value of the same, failure to definitely instruct on the question of the reasonable value of the fixtures was not erroneous, in the absence of a request therefor.

**Same:** EVIDENCE. Refusal to permit the mayor of defendant city to state in this case whether he would not have consented to placing the fixtures in the plant had he known of the reserved title in the seller, or to permit members of the city council to state whether they would have consented to allowing the contractor for the fix-

tures had they known of such reserved right, was not reversible error; although the evidence might properly have been admitted as bearing on the question of notice of such reserved title, and in support of the city's plea of estoppel.

**Same:** FIXTURES: CONVERSION: RIGHT OF RECOVERY. Where the title 8 to property has been changed from personalty to realty with the consent of the seller of the personalty his right of recovery is based upon the reasonable value of the property, rather than the right to recover the property itself.

*Appeal from Cass District Court.*—HON. E. B. WOODRUFF, Judge.

SATURDAY, DECEMBER 13, 1913.

ACTION at law to recover for alleged conversion of electrical machinery and fixtures. From a verdict and judgment in favor of the plaintiff, this appeal is taken by the defendant.—*Reversed.*

*Thomas Whitmore, W. R. Green, C. A. Meredith,* and *Thomas B. Swan,* for appellant.

*Max W. Babb, Willard & Willard,* and *H. C. Case,* for appellee.

WITHROW, J.—I. This action was brought to recover for the conversion of certain electrical machinery. The appellee claims: That the appellant converted to its own use fifty-eight transformers, three exciters, one 230 K. W. generator, and one switchboard, and that by reason of said conversion the appellee is damaged in the sum of $8,284.06, with interest thereon from November 8, 1911, at 6 per cent. That the appellee contracted said property to one Joseph A. Bortenlanger, conditionally, appellee retaining the title to or ownership of said property, "until full and final payment therefor shall have been made according to the terms of said contract, which

was as follows:   80 per cent. on or before the 10th of the month following shipment; 20 per cent. on completion of plant, but in any event not later than four months from date of shipment.''   The exciters and transformers arrived at Atlantic about the 18th day of July, 1911.   The generator and switchboard reached Atlantic about the 26th day of July, 1911.   No part of the consideration has ever been paid, and the appellant is in possession of said property in controversy, having refused to deliver the same to appellee upon demand made prior to the commencement of this action.

For answer the defendant claimed that the plaintiff sold, furnished, and delivered said transformers, exciters, generator, and switchboard, and each and all of them, to said Joseph A. Bortenlanger with the intention and for the purpose of having the said Bortenlanger use the same in the construction of a power plant and lighting system for the defendant city under a contract which the said Joseph A. Bortenlanger Company had with the defendant city, and the said Joseph A. Bortenlanger did so use the same with the knowledge and consent of the plaintiff.   It therefore alleges:   That plaintiff is barred and estopped from maintaining this action, because it first clothed Joseph A. Bortenlanger with the *indicia* of ownership by delivering the property in question to him, and then without objection stood by and permitted appellant, without any notice, actual or constructive, of the claim made thereto by appellee, to pay Joseph A. Bortenlanger, its contractor, $3,352.40, or 90 per cent. of the estimated value of the transformers and exciters, and by reason of such payment the appellant claims to have the right of possession of all the property in controversy, and that the appellee is barred and estopped from asserting title thereto.   That Joseph A. Bortenlanger, who had agreed with the appellant to furnish the material and build for it an electric light and power plant and install in said appellant's power house on appellant's land, used said property in controversy, and the same had become a 'fixture thereto, and thereby had become and was the abso-

lute property of the appellant. It is also pleaded and was proven that Bortenlanger failed to complete his contract, became insolvent, and that the defendant city was compelled to take charge of and finish the work at large expense to itself above the original contract price. It denies that it had notice, actual or constructive, of plaintiff's claim, alleges that payments were made by it to Bortenlanger under their contract from time to time as he became entitled to such, and that included in the estimates for which payments were made were the items for which recovery is now sought by the plaintiff.

There was a trial to a jury, resulting in a verdict in favor of plaintiff for $8,284.06, with interest, and the defendant appeals.

II.   The appellant is a city of the second class; the appellee was at the time of the transaction under consideration a foreign corporation, with its principal place of business outside of Iowa; and Joseph A. Bortenlanger and the Joseph A. Bortenlanger Company were also nonresidents of the state. Desiring to erect and establish an electric light plant for municipal purposes, the city of Atlantic, on the 21st day of March, 1911, entered into a contract with the Joseph A. Bortenlanger Company under which the latter, for a consideration of $43,000 and certain old machinery, agreed to furnish and install the necessary machinery and fixtures, and to furnish all material and labor for the completion of the plant according to the plans and specifications which were made the basis of the contract. On March 15, 1911, Allis-Chalmers Company made proposal to furnish certain machinery for said work, such proposal having been directed to Mr. Joseph Bortenlanger for the city of Atlantic, Iowa, which was on the 15th day of March, 1911, accepted by Bortenlanger at Omaha, Neb., and on the 5th day of April, 1911, such was approved by the Allis-Chalmers Company at Milwaukee, Wis., thus completing the execution of the contract.

So far as is pertinent to the principal question raised in

the case, the provisions of the contract between Bortenlanger and the Allis-Chalmers Company were as follows:

The title and right of possession to the machinery herein specified remains in the company until all payments hereunder (including deferred payments and any notes or renewals thereof, if any) shall have been fully paid in cash, and it is agreed that the said machinery shall remain the personal property of the company, whatever may be the mode of attachment to realty or otherwise, until fully paid in cash. Upon failure to make payments, or any of them, as herein specified, the company may retain any and all partial payments which have been made, as liquidated damages, and shall be entitled to take immediate possession of said property, and be free to enter the premises where said machinery may be located, and to remove the same as its property, without prejudice to any further claims on account of damages which the company may suffer from any cause.

This contract was filed for record May 17, 1911, in the office of the county recorder of Cass county, Iowa, in which county is the city of Atlantic, which was before any part of the machinery claimed had been furnished; but, as both of the parties were nonresidents, such did not amount to constructive notice, were such sufficient. Code, section 2906. Four estimates were made of the work done by Bortenlanger under his contract with the city, and payments were made upon them in accordance with the provisions of the contract. Included in the estimates upon which payments were made were a considerable portion, but not all, of the machinery and equipment furnished by the Allis-Chalmers Company, but that which was not in the estimate was delivered and awaiting installation. No part of the money received by Bortenlanger was paid to the Allis-Chalmers Company. On the 9th day of September, 1911, by formal written notice to the mayor and city council of Atlantic, Bortenlanger abandoned the contract with the city, and thereafter the city caused the work to be completed.

It is claimed, and the evidence tends to support the fact, that while no actual notice of the reserved title in Allis-Chalmers Company was served on the mayor, or members of the city council, that notice was acquired by certain members of the council. It also is claimed that the engineer who prepared the original estimates for the city had notice of such claim, and that his relation to the city and to the work was such as to charge the city with notice. It appears, and the evidence tends to show, that the machinery and appliances furnished by the Allis-Chalmers Company were so erected and attached to the real estate owned by the city as to be a permanent and fixed improvement thereto, and a part of the real estate. It further appears by concession of counsel, which, however, was not in the presence of the jury, but to the court, that the appellee knew, before furnishing it, and when contracting with Bortenlanger, that it was intended to be so used.

III. Many errors are assigned. Some relate to instructions given, the failure to instruct upon questions directly raised by the pleadings, and rulings upon the admissibility of evidence. Many of them depend upon the determination of the law as to the ultimate right of recovery under conditions such as are here presented, and we therefore will first consider that which we conclude to be the controlling question in the case.

IV. The theory upon which the cause was tried in the district court was that the nonliability of the city must be made to depend upon want of notice by it of appellee's reserved title, and this element entered into the various counts pleaded by way of defense. The action in the present case is for conversion, based upon the alleged ownership of the property. It clearly appears from the evidence that the property was generally so attached to the real estate as to become a part of it, and that its removal could not be accomplished without substantial damage to the structure of which it forms a part. With these facts before us, together with

the knowledge by appellee of the use to which the machinery was to be put, together with the payments made by the appellant upon the estimates, we turn first to the law which governs the parties.

By the weight of authority it is held to be the rule that when a vendor sells machinery, which it is understood will become a part of the realty by being attached to it, and that it

1. FIXTURES: machinery.

cannot be removed without injury, and thereby places it within the power of the vendee to so attach it, and sell or mortgage it to innocent purchasers, the better and more just rule is that the vendor must suffer. *Haven v. Emery,* 33 N. H. 69; *Voorheis v. McGinnis,* 48 N. Y. 278; *Hunt v. Iron Company,* 97 Mass. 279; *Porter v. Steel Co.,* 122 U. S. 267 (7 Sup. Ct. 1206, 30 L. Ed. 1210); *Jenks v. Colwell,* 66 Mich. 428 (33 N. W. 528, 11 Am. St. Rep. 502); *Wickes Bros. v. Hill,* 115 Mich. 333 (73 N. W. 375). In *Hopewell Mills Company v. Taunton Savings Bank,* 150 Mass. 519 (23 N. E. 327, 6 L. R. A. 249, 15 Am. St. Rep. 235), it was held that when machinery was furnished for the manufacture of collor cloth, and was placed in a mill already subject to mortgage, it became realty as against the mortgagor and his grantees, when it was heavy, not intended to be removed, but fastened in position to be used until worn out. This rule is recognized and adopted in *Thomson v. Smith,* 111 Iowa, 718, as applied to wagon scales, which were a part of the realty.

But we think it may and should be more broadly stated, as applied to conditions such as are under inquiry here. Where a sale of personal property is made, to be used for a

2. SAME: conditional sales: bona fide purchaser: notice.

particular purpose by a third party, and to become attached to and a part of the real estate, and when such a third party and the purpose is known to the seller as the one who is to receive such property under contract with the buyer to pay for it under certain conditions which will arise only between the buyer and the owner of the property, to protect itself in a reserved title under the contract with the buyer, the third

party should have actual notice of such reserved claim, that it may protect itself against loss. This rule is based upon the principle of an estoppel, and is consonant with equity and fair dealing, and is in harmony with the thought in the cases above cited. And we are further of the opinion that constructive notice of such reserved right, under conditions stated above, would not be sufficient.

The object of the recording acts is to provide a means by which the owner of property in the possession of a third person, or the holder of a lien upon it, may protect himself as against the world. Based upon the theory that it cannot know who might acquire rights or title from the person in possession, and as a measure of safety to the seller, and also as a bar against possible fraud, whoever may participate in it, such general protective provision is made; but the reason which is the basis of the statute providing for record does not exist when the one who, as third party, will acquire rights, is actually known to the seller. As against a plea of estoppel arising in such a case, we think constructive notice of the claim would not be sufficient. With this as a rule we consider the errors alleged.

3. SAME: sales: recording acts: application of statutes.

V. Instruction No. 19, given by the trial court, in stating the elements which would constitute a defense to the claim, among other things said that if the machinery and appliances were placed inside the power house upon the land of defendant, and were adapted to and necessary to the plant, and if defendant relied upon the title of the property being in Bortenlanger, and paid to him 90 per cent. of the estimated value of the property, and that such was done before the defendant had actual notice of the contract between the plaintiff and Bortenlanger, then, if such facts were shown, the plaintiff would be estopped from asserting any claim to the property superior to that of the defendant. The giving of this instruction is charged as error.

4. SAME: conversion: estoppel: elements of defense: instruction.

While in one of the divisions of its answer in support of its plea of estoppel the defendant pleaded payment in accordance with the estimates, which were 90 per cent., in count 4 of its answer, in pleading the estoppel, it pleaded payment of large sums of money by it to Bortenlanger, without notice or knowledge of plaintiff's claim. In the view we have as to the law, we think the instruction as given places upon the defendant burdens heavier than it was obliged to bear; for, without notice on the part of the appellant of the reserved title in the appellee it could not be held that in addition to such facts the city must have paid the estimate allowance or 90 per cent. before its defense would be complete, and this is the effect of the given instruction. In no other instruction given by the trial court was a different requirement stated. Under the rule announced in the previous division of this opinion, we are of opinion that when machinery and equipment is furnished, as was this, with the knowledge of the vendor of the use to which it was to be put, and when such sale is followed by a delivery, and the use of the same in the construction in such manner as to make it a part of the real estate, the question of payment to the contractor or vendee cannot be a controlling element in fixing the right of third parties who had acted without notice. While as between the vendee and the city with which he contracted for the erection of the plant there would properly arise questions of right depending upon payment, they could not reach to one who was a stranger to the transaction. As between the Allis-Chalmers Company and the city of Atlantic there was no privity in any of the contracts. The appellee clothed Bortenlanger with apparent title to the property, assuming there was no notice of its claim, and, having then permitted him to use it under his contract with the city, and when it became fixed to the property of the city and was then of a permanent character, as between the vendor and the city without notice the right of the latter would be dominant.

VI. The evidence showed that the articles furnished by

the appellee were received and installed at different times. In its instruction presenting the claim of an estoppel the trial court made no distinction as to property which was placed in position before notice, and that which was installed after notice, if there was notice. In the evidence a question of fact arose, not only as to whether the city had notice, but also as to the time when it was received. The question was one which fairly arose in the case under the pleadings in the amendment to the answer, and in the proof, and it was the duty of the trial court to instruct the jury upon the ultimate questions thus arising. Being within the issues, a failure to so instruct was error. *Steele v. Crabtree,* 130 Iowa, 313.

5. SAME: instructions.

VII.   Instruction No. 17, which incorporated instruction No. 11 by reference, is claimed to have been erroneous. The two instructions stated the degree and nature of proof required before plaintiff could recover, and defeating the right of recovery only upon proof that ''plaintiff is barred and estopped to claim title to said property, as against the defendant city, as will be hereafter explained.'' The only statement as to what would in the present case constitute an estoppel appears in instruction No. 19, to which we already have referred. We think in the several instructions bearing upon that question there was an omission to present to the jury the different rights pleaded by defendant, not only as to its liability for the whole claim, but also for such part of it, if any, as might be represented by machinery received and installed after notice, if any part had been so installed before notice.

VIII.   Complaint is made of the failure of the trial court to state a measure of damages, or instruct upon the question of the reasonable value of the goods sought to be recovered. The case seemed to proceed upon the theory that the contract or selling price was competent proof as to value, and as applied to articles of the character in question we do not hold that such theory was wrong; nor do we hold that a failure to instruct

6. SAME: measure of damages: instructions.

more definitely upon that question was erroneous, in the absence of instructions so requesting.

IX.   Error is urged in the refusal of the trial court to permit the mayor of Atlantic to testify whether he would have consented to the machinery being made a part of the plant, had he known there was a reserved title, and also in not permitting members of the city council to testify whether they would have consented to allowing the contractor any sum for the transformers included in an estimate, had they known of the reserved right.   While we think the evidence could properly have been admitted as bearing upon the question whether the city acted with or without notice, and in support of its plea of estoppel, yet, being no more than expression of purpose and not of fact, we would not reverse on that ground.

7. SAME: evidence.

X.   It is also urged that, under facts such as appear in this case, trover or conversion will not lie, as such proceeding can be based only upon the right to the possession of personal property.   We are of opinion that where, by the consent of the vendor, the title to property has been changed from personalty to real estate, the right of recovery must rest upon the reasonable value of the property so used, rather than to the property itself.   *Detroit Ry. Co. v. Busch,* 43 Mich. 571 (6 N. W. 90).   We have treated the case upon the theory that the evidence tended to establish that the machinery and equipment had all become a part of the realty.   It is the claim of the appellant that it did not, and upon this question we could not say the facts are free from dispute.   Having indicated our view as to under what circumstances an action for conversion would lie, we have gone as far as the case now requires.

8. SAME: fixtures: conversion: right of recovery.

For the errors noted, the judgment of the lower court is *Reversed.*

WEAVER, C. J., and DEEMER and GAYNOR, JJ., concur.